TODD KIM
Assistant Attorney General
STEVEN O'ROURKE
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Washington, D.C. 20044
Telephone: 202-514-2779
steve.o'rourke@usdoj.gov
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VIGOR INDUSTRIAL, LLC, et al.,<br><br>Defendants. | CIVIL NO. 22-cv-06101-SK<br><br>**NOTICE OF UNOPPOSED MOTION TO ENTER CONSENT DECREE with MOTION and MEMORANDUM**<br><br>**Hearing date:** No hearing requested for unopposed motion. |

TO ALL PARTIES AND COUNSEL OF RECORD:

Please take notice that Plaintiff, the United States, hereby moves the Court to approve, sign and enter the proposed Consent Decree ("C.D." or "Decree"), which was lodged in the docket on October 17, 2022. Dkt. # 2-1. Upon the Court's approval, the Decree will end this litigation. This motion is unopposed, because by terms of the Consent Decree:

> The Settling Defendants waive all objection to, and consent to, the entry of this Consent Decree without further notice, and agree not to withdraw or oppose entry of the Consent Decree or to challenge any provision of the Consent Decree.

C.D. ¶ 19. Moreover, undersigned counsel informed counsel for the defendants that this motion would be filed as an unopposed motion.

MOTION TO ENTER CONSENT DECREE - 1

I.      **Background & Summary of Settlement.**

This case arises from the sinking of the YFD-70 Drydock ("Drydock") on October 25-26, 2016. In 2016, the Vigor defendants (collectively, Vigor Industrial, LLC, Vigor Marine, LLC, and Puget Sound Commerce Center, LLC) sold the Drydock to defendant Amaya Curiel Corp. At the time of the sinking, the Drydock was under tow from Seattle, WA to Mexico. The Drydock sank inside the Monterey Bay National Marine Sanctuary ("MBNMS"). C.D. at 3 ¶ B. The Drydock remains on the seafloor inside the MBNMS, about 40 miles southwest of San Francisco, in water depth of about 900 meters (over a half mile). Complaint ¶ 14.

The MBNMS is managed by the National Oceanic and Atmospheric Administration ("NOAA"). C.D. at 3 ¶ C. Under the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. § 1431, *et seq.*, NOAA is authorized to assess the extent of any injury to sanctuary resources in the marine sanctuaries, and may sue for damages to fund the restoration of any such sanctuary resources.

In July 2018, Vigor, on behalf of itself and Amaya, in cooperation with NOAA, chartered a vessel with submarine remotely-operated vehicle capabilities to locate the wreckage of the Drydock, which was located submerged on the seafloor within the MBNMS boundaries. C.D. at 3 ¶ D. The United States alleges that Sanctuary Resources of the MBNMS were harmed or destroyed by the sinking of the Drydock, including corals, seafloor habitat, and organisms that may have been either displaced or crushed and killed.

Under the Decree, the Settling Defendants will pay $9,135,134.80 as damages under the NMSA. C.D. ¶ 4. In exchange, the United States covenants not to sue the Settlors under the NMSA for the sinking incident, subject to standard reservations of rights. C.D. ¶¶ 9 – 11.

The Decree was the subject of a public comment period, under 28 C.F.R. § 50.7 and

MOTION TO ENTER CONSENT DECREE - 2

Paragraph 18 of the Decree. The notice was published in the Federal Register on October 21, 2022, 87 Fed. Reg. 64,115, but no comments were received.

If the Court enters the Consent Decree, it will become a final judgment and this case will be concluded. C.D. ¶ 26.

## II. Legal Standards

### A. NMSA.

Under the NMSA, any person who "destroys, causes the loss of, or injures any sanctuary resource" is liable to the United States for "damages resulting from the destruction, loss, or injury." 16 U.S.C. § 1443(a)(1). A "sanctuary resource" is "any living or nonliving resource of a national marine sanctuary that contributes to the conservation, recreational, ecological, historical, educational, cultural, archeological, scientific, or aesthetic value of the sanctuary." 16 U.S.C. § 1432(8).

The NMSA directs NOAA to assess damages to sanctuary resources. 16 U.S.C. § 1443(b)(2). "Damages" includes: the cost of replacing, restoring, or acquiring the equivalent of a sanctuary resource; the value of the lost use of a sanctuary resource pending its restoration or replacement; the cost of damage assessments; and the reasonable cost of monitoring appropriate to the injured, restored or replaced resources. 16 U.S.C. § 1432(6).

NOAA must use any recovered damages to "restore, replace, or acquire the equivalent of the sanctuary resources that were the subject of the action, including for costs of monitoring" or otherwise "restore degraded sanctuary resources." 16 U.S.C. § 1443(d).

### B. Standard for Entering a Consent Decree.

The Ninth Circuit's test for approving a consent decree is whether the settlement embodied in the decree is "fair, reasonable, and consistent with the objectives" of the statute at

issue. *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 743 (9th Cir. 1995); *Cal. Dep't of Toxic Substances Control v. Waymire Drum Co., Inc.*, No. C-98-03834 PJH, 1999 WL 169536, at *2 (N.D. Cal. Mar. 19, 1999) (citing *Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 49 (9th Cir. 1988)). Sometimes the standard is articulated as "fair, adequate and reasonable." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (citation omitted); *United States v. Blue Lake Power, LLC*, No. 16-cv-00961-JD, 2017 WL 713145 at * 4 (N.D. Cal. Feb. 23, 2017).

Courts should not use this test to determine whether the consent decree is one that the "court itself might have fashioned, or considers as ideal," but rather "whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). Indeed, the Ninth Circuit has emphasized that a consent decree "is not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise." *Oregon*, 913 F.2d at 580 (citation omitted).

Although "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge," *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982)), the courts usually exercise their discretion in a limited and deferential manner because of the "overriding public interest in settling and quieting litigation." *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). Both the parties and public benefit from "saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983).

Moreover, in reviewing a consent decree involving a federal agency, a district court "must refrain from second-guessing the Executive Branch." *Montrose Chem.*, 50 F.3d at 746

MOTION TO ENTER CONSENT DECREE - 4

(citation omitted). The court's deference is "particularly strong" when the settlement "has been negotiated by the Department of Justice on behalf of a federal administrative agency . . . which enjoys substantial expertise in the environmental field." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991); *Blue Lake Power,* 2017 WL 713145 at * 4*; United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005).

### III.     Argument.

In this case, the United States and the Defendants agree that this proposed Consent Decree meets the legal standard for judicial approval of a consent decree. C.D. at 4 ¶ G.

Moreover, this Decree was negotiated by lawyers from the Environment and Natural Resources Division of the United States Department of Justice, at the request of NOAA and with counsel from NOAA participating. C.D. at 17 (signature page identifying counsel). As such, there is a presumption of validity. *Akzo*, 949 F.2d at 1436; *Chevron*, 380 F. Supp. 2d at 1111. Given that no comments were received, there is no reason to override that presumption.

Beyond the presumption favoring settlements, and beyond the "particularly strong" deference where DOJ and NOAA negotiate the settlement, *Akzo*, 949 F.2d at 1436, the Consent Decree here is fair, reasonable, adequate, and consistent with the objectives of the statute at issue. *Cal. Dep't of Toxic Substances*, 1999 WL 169536, at *2; *Montrose Chem.*, 50 F.3d at 743.

**First**, the Decree is fair. The standard for entry of a consent decree requires an examination of whether the proposed decree is both procedurally and substantively fair. *See United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014). The procedural fairness prong is generally met if the consent decree is the product of good faith, arms-length negotiations "fair and full of adversarial vigor." *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1025 (N.D. Cal. 2011). In considering substantive fairness, the district court "does not determine

MOTION TO ENTER CONSENT DECREE - 5

whether the settlement is one which the court itself might have fashioned, or considers ideal." *Id*. Rather, "[t]he court need only be satisfied that the decree represents a reasonable factual and legal determination." *Oregon*, 913 F.2d at 581 (citation omitted) (internal quotation marks omitted).

Here, the settlement is procedurally fair because the parties reached the agreement after negotiation at arm's length by experienced attorneys. *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025. Defendants here were represented by experienced counsel who advocated for Defendants' best interest during negotiations. *See* C.D. ¶ 15 (identifying counsel for the defendants) and the signature pages.

The Decree is also substantively fair because it represents a reasonable factual and legal determination. *Oregon*, 913 F.2d at 581. There is no dispute that the Drydock came to rest atop sanctuary resources. Settling Defendants would likely argue that the dollar value of those resources is less than $9.1 million, and NOAA would likely argue that it is higher; the settlement is thus a reasonable determination. It is also substantively fair because the United States took into consideration the Settling Defendants' cooperation in funding the cruise to locate the Drydock and film the Sanctuary Resources at issue with the remotely-operated vehicle.

**Second**, the settlement is consistent with the objectives of the statute. NOAA, with the help of the Settling Defendants, used footage and measurements from the remotely-operated vehicle to study the Sanctuary Resources injured by the sinking of the Drydock. The remotely-operated vehicle was used to conduct visual transects (with corresponding video) to characterize the condition of the wreckage, the interface between the Drydock and the seafloor, and the surrounding habitat. C.D. at 3-4 ¶ D. NOAA used the data from this cruise to assess injury, loss, or destruction to Sanctuary Resources, including to seafloor habitat and to organisms that may

MOTION TO ENTER CONSENT DECREE - 6

have been either displaced or crushed and killed by the sinking and landing of the Drydock on the seafloor within MBNMS. *Id*. These activities are consistent with the NMSA's provisions that call for NOAA to assess damages to sanctuary resources. Using the cruise data, NOAA was able to make preliminary estimates of the costs of restoration of the sanctuary resources, including monitoring, and the costs of damage assessment. Based on this existing data and considering the availability of funding for restoration provided through this settlement, NOAA believes that Settling Defendants' obligations under this Consent Decree constitute a reasonable compromise for the disposition of claims of the United States against the Settling Defendants in this matter. C.D. at 4 ¶ E.

Going forward with a settlement rather than conducting additional damage assessment at this time is also consistent with the NMSA, as the goal is to use the damages to "restore, replace, or acquire the equivalent of the sanctuary resources that were the subject of the action, including for costs of monitoring" or otherwise "restore degraded sanctuary resources." 16 U.S.C. § 1443(d). Focusing on using the recovered damages from the Settling Defendants to conduct restoration sooner, without further assessment and without litigation, furthers this goal.

**Finally**, the settlement is reasonable and adequate, for the same reasons stated in the preceding paragraph. Moreover, litigation would consume a tremendous amount of the parties' and this Court's limited resources for a matter that has been resolved amicably, and litigation would have currently-unknown substantive outcomes.

## IV. Conclusion.

The United States requests that the Court sign the Consent Decree (Dkt # 2-1) on page 16, and enter it in the docket as the final judgment in this case. Because entry of the Consent Decree is the relief requested, we have not supplied a proposed order.

MOTION TO ENTER CONSENT DECREE - 7

Respectfully submitted,

TODD KIM
Assistant Attorney General

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
Steve.orourke@usdoj.gov
202-514-2779

OF COUNSEL:
Ericka Hailstocke-Johnson, Attorney-Advisor
Office of General Counsel, Natural Resources Section
National Oceanic & Atmospheric Administration
501 W. Ocean Boulevard, Long Beach, CA 90802

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this document and any attachments will be served this date by email as follows:

David R. Boyajian
As counsel for Vigor Industrial, LLC
Schwabe Williamson & Wyatt
1211 SW Fifth Ave., Suite 1900, Portland OR, 97204
dboyajian@schwabe.com

Bill Collier
As counsel for Amaya Curiel Corporation
Collier Walsh Nakazawa LLP
One World Trade Center, Suite 2370, Long Beach, CA 90831
bill.collier@cwn-law.com

/s/ Steven O'Rourke
STEVEN O'ROURKE

MOTION TO ENTER CONSENT DECREE - 8